Good morning. Our next case on today's docket is the case of Apex Oil v. Accident & Casualty Insurance Co. of Whittaker et al. And we have Mr. Bill Knapp, William Knapp for the appellant. And we have Donna Befornik for the appellee. And Mr. Bradley Klein who will not argue. There you go. Sorry. Just analyzing who I see here. You may proceed. Thank you, Justice Chaffetz. May it please the Court, my name is Bill Knapp. I'm appearing today on behalf of Apex Oil Co. Inc. The appeal before this Court presents the following question. Whether the trial court in this case erred in extending the Illinois Supreme Court's ruling in the waste management case to the consulting witness privilege contained in Illinois Supreme Court Rule 201C3. We believe that the trial court did in fact err in so ruling and we are asking this Court to reverse the trial court's ruling. In 1991, the Illinois Supreme Court held in Waste Management v. International Surplus Lines Insurance Company that in coverage litigation between an insurer and insured, attorney-client and work product privileges did not apply to documents that arise in the underlying litigation between the insured and the adverse party. In this case, the trial court ruled that waste management also applies not only to attorney-client and to attorney-work product, but also to the consulting witness privilege and ordered Apex to produce such documents. Apex took a contempt citation from the trial court in order to pursue this interlocutory appeal of that ruling. Now there's a threshold issue that comes in this case before reaching the merits and that is the question of choice of law. Before reaching the waste management issue, this Court must first decide what state's law should apply. This litigation arises to events which occurred during the Apex ownership of the Clark Refinery in Hartford, Illinois. That refinery was owned between the years 1967 and 1988. From 1967 until 1981, Clark Oil and Refining Corporation of Wisconsin was the owner of the refinery. Apex subsequently acquired and the procedural, the corporate history is a little bit tangled, but it's set forth in our brief. And ultimately, the predecessor to the current Apex Oil Company, Inc., acquired the Clark Refinery in 1981 and held ownership of it until 1988 when it was sold in connection with a bankruptcy proceeding. So the relevant time frame was 1967 to 1988. Now, the policies of insurance at issue in this case, and this case has narrowed somewhat in scope since it was initially filed. There were many carriers initially named. It has now narrowed to a fewer number as a result of settlements and dismissals, et cetera. But policies during the years 1967 to 1981 were issued to the Clark Oil and Refining Corporation headquarters in Milwaukee, Wisconsin. Subsequently, from 1981 until 1988, those policies of insurance were issued to Apex at its corporate headquarters in Clayton, Missouri, in St. Louis. And these policies related to facilities owned initially by Clark Refining Corporation, ultimately then the predecessor to Apex, these policies ensured risks, refineries, terminals, ports, a couple of thousand service stations all over the country. We believe that the Emerson Electric versus Aetna case is instructive on choice of law under these circumstances. Emerson had a remarkably similar fact matter that we cited in our brief, the Emerson case from the First District, the 2001 case. It was insurance coverage litigation for environmental contamination. Those policies ensured risks at multiple sites just as here. And in that case, Emerson, discussing the lack of Hickey factors enunciated by the Illinois Supreme Court, determined that the proper basis for choice of law was not the locations of the insured risk, but instead domicile or the location of the insured. And we believe that Emerson controls here based on the similarity of the facts such that the law that should be applied either is the law of Wisconsin from 1967 to 1981 or for the years 1981 to 1988, the law of Missouri. Mr. Nair, what about the CSX decision? CSX decision and the Abbott Laboratories decision, both cited by the defendants in this case, are federal court cases. They both apply federal rules of procedure. They both state correctly that in diversity cases, the law to be applied is the law of the state where the action arose. That is correct law in federal court, but that does not address the choice of law issues that are presented to the court in this case. And the restatement? The restatement is a very interesting issue unto itself. As this court is well aware, only the Illinois Supreme Court can adopt the restatement and make it the law of the state of Illinois. We've been unable to find, and I don't think counsel for the defendant has cited too many cases where the Illinois Supreme Court has adopted the restatement on choice of law. The cases that they cite for that proposition that the restatement should control are appellate court cases, not Supreme Court cases. And in fact, we have not been able to locate any Illinois Supreme Court case that has expressly adopted Section 139 as a restatement of conflicts of law which the defendants rely on. But while we're on that subject, I don't think that it makes a difference to the outcome. Because the distinction that the appellee relies upon in the restatement, principles of conflicts of law, versus the Lavahiki principles enunciated by the Illinois Supreme Court, under the restatement they say it's the character and the nature of the communications of what they are connected to which controls not the domicile of the party or the location of the insured risk. Well here, all the communications at issue, consulting witness communications, either were directed to Apex at its headquarters in St. Louis or originated from Apex's headquarters in St. Louis to the recipient party. So even if you apply the restatement test under the principles of the restatement on conflicts of law, the result would be the same. Because the fundamental character of the communications is directly tied to Apex's corporate headquarters in Clayton, Missouri. So we believe that for all intents and purposes, it's an academic analysis as to whether to apply a Lavahiki versus the restatement. The result, we believe, should be the same. If Missouri law or Wisconsin law is applied here, Wisconsin has expressly rejected the waste management principle, the waste management ruling in Illinois. What about Missouri though? Missouri has never adopted waste management, so there's no case to suggest that they would do so. They have not expressly rejected it, like Wisconsin, but they have never adopted it either. So we think that Missouri rules expressly create and recognize a consultant witness privilege under Rule 5601B3. Wisconsin does likewise under its Rule 804012C. So both Missouri and Wisconsin recognize a consultant witness privilege. As I said, Wisconsin has expressly rejected waste management. Missouri has never adopted waste management as being its rule of law. Now, I'll just sort of parenthetically address a side issue, and maybe necessarily return to it on rebuttal. I don't know if the defendants are still going to maintain it, but they have suggested in their submissions that the choice of law issue is not part of this appeal. They filed a motion to strike portions of the apex brief on that basis. That motion was ultimately denied. So our position is that the court has essentially already addressed that issue, but to the extent that any argument on that point is necessary or helpful, we think it's clear under the case law that the choice of law issue is a fundamental predicate to the issue of whether or not waste management should be applied to consultant witness privilege. The choice of law issue was addressed by the trial court in an October 6, 2011, order. The notice of appeal filed by Apex in this case expressly appeals not only from a more recent order of contempt, but also from the original order on the choice of law. And to borrow a phrase from the case law, that choice of law ruling is clearly a step in the procedural progression leading to the consultant witness order. And we cited the Norse, and I'm going to butcher this pronunciation a little bit, I think it's Norwegian, the Norskog versus Pyle or Pyle case. It's a 2001 Illinois Supreme Court case, which stands for this very proposition. In that case, they were addressing the question of privilege under the mental health act, and they stated at that point, I believe, to a similar position to the position being taken in this case, and that is that only the final rule of the court on the order of contempt was before the court for personal jurisdiction. And the Supreme Court rejected that argument, saying, and I'm not quoting from the case, as a general rule, courts of review may sustain orders on any grounds which are called for by the record, regardless of the grounds relied on when the order was entered. It went on to say that defendants' appeal of the contempt order called into question the correctness of the discovery order and allowed review of all the trial court's rulings on the application of the mental health act's confidentiality privilege. So it's clear from the Illinois Supreme Court's pronouncement in the Norskog case that the choice of law issues before this court. And again, I don't know if that's something that the defendants are still, or the appellees are still maintaining in this case or not. But I think it's clear that the court has to continue that, consider that issue as a step in the procedural process. Assuming, though, for the sake of argument, that Illinois law would apply, then the question becomes, did the trial court err in extending waste management to consultant witness privilege? And we believe that it did. Now, the Supreme Court, in that decision in 1991, stated very clearly in its conclusion, and I'm quoting now again from the case, we hold only that the attorney-client privilege and work-product doctrine are not applicable to bar disclosure of defense counsel's files in either the Miller or the Nunn litigations, referring to the underwriting cases. So the court inserted the word, only, we hold, comma, only, comma, that the attorney-client privilege and work-product doctrine are not applicable under those circumstances. It seems clear that the Illinois Supreme Court chose to limit the scope of its ruling very specifically to the doctrine of attorney-client privilege and work-product. Consulting expert privilege is a completely separate, independent privilege created by rule. And, of course, it was the same court, the Illinois Supreme Court, who offered waste management and also offered Rule 201 and the consulting expert privilege. And, in fact, the consulting expert privilege is addressed in the very next section of Rule 201. If you look at 201B2, it talks about attorney-client and work-product. Then you go to B3, and it discusses consulting expert privilege as a completely separate privilege. Can you tell me why you think, then, that the rationale wouldn't apply and why, essentially, a consultant would have greater immunity or greater privilege? I can give you my own personal opinion. I'm not sure how much it matters because I think that it's the Illinois Supreme Court's view of it that controls. My view is it's intended to protect something different. The ability to consult with a witness, an expert witness, without fear of having that information redisclosed, is a separate and independent privilege from that related to communication with a client and an attorney work-product. So what about the common interest doctrine? The common interest doctrine that's discussed in waste management, clearly, the waste management court felt was a basis to not apply the attorney-client and the attorney work-product privilege. The court has never said the same thing about the consulting expert privilege, and I think that's telling. It's been 23 years since that decision was rendered in waste management, and no Illinois court, neither the Supreme Court nor any appellate court, has ever said or even suggested that waste management should be extended and applied to consulting witness privilege. So it appears that the Supreme Court identifies those as being sufficiently distinct that it has never extended its own ruling beyond attorney-client and attorney work-product, even though it's undoubtedly had the opportunity to do so, had it wished, in the last 23 years. And to me, that is the central issue of the case. If the doctrine is to be extended, I believe that under the case law, only the Supreme Court can do so. And we cited in our brief to the Williams v. Brown manufacturing case, which is a case out of this court, a fifth district court, in which in discussing whether or not they were bound by the Suvada case, stated, and citing to an Illinois Supreme Court, says, the Illinois Supreme Court said, and now quoting with end quotes, where the Supreme Court has declared the law on any point, it alone can overrule or modify its previous opinion. How would we be overruling the Supreme Court by deciding that either waste management applied or that, because it wasn't an issue in that case? Well, what I intended to do and maybe failed to do, it says it alone can overrule and modify its previous opinion. This would not be an overruling. It would be a modification or an extension of that doctrine to a new subject, which was, according to the language of the waste management case, expressly limited only to attorney work-product and attorney-client privilege. So to extend it beyond the scope of that, I think it's the preference of the Supreme Court, and certainly not of the trial court in this case, to say, and she's very explicit in her order, I am extending, she acknowledged in her order, the trial court, that waste management does not address consultant-expert privilege, but ruled that she was going to expand and expand waste management to cover that privilege, and we believe that that falls beyond the scope or the province of the trial court to do what the Supreme Court has expressly, by its own language, limited the scope of its ruling only to… I read that to say that that's the only thing they were deciding that was the holding in that case. And in the 23 years since that case was decided, it has never been extended beyond the scope of those two principles, attorney-client and attorney-work-product. But they haven't had the issue before then, have they? It has not been expressly addressed one way or the other. Now, whether the issue was presented in the form of a PLA or something of that nature, I don't know. But they have certainly never ruled on that issue one way or the other. And it seems to me that they are the ones that ought to. If this court thinks that issue needs to be decided, I think that it ought to be sent to the Supreme Court with a certificate of importance to have the Supreme Court make its pronouncement on that issue. Well, generally, we decide things, and then they tell us whether or not we're right or wrong. Right. They're not real crazy about certificates of importance either, but anyway. Well, of course, lawyers think everything they do is important. Of course. We're always looking to be validated, you know, that what we're doing is important work. So I guess my view of it, too, and the other thing I wanted to mention is this. Of course, the only Supreme Court is the author of Rule 201. And had they wished to do so, they could have modified the rule to take into account waste management, and they have not done that either. And so, you know, it seems to me that if this issue is going to be decided, it needs to be decided by the Supreme Court. If they want to extend the doctrine, they can do so. I don't think it's the province or the trial court to do so. And accordingly, we are going to request – we are requesting that this court reverse the trial court's ruling on the issue. Thank you. Thank you, Mr. Knapp. You'll have the opportunity for rebuttal. Ms. Volbornik, is that correct? Yes, it is. May it please the court, I'm Donna Volbornik. I represent Travelers' Casualty Insurance Company, St. Paul Fire and Marine Insurance Company, Northland Casualty Company, St. Paul Surplus Lines Insurance Company, and the Travelers' Indemnity Company. And I think that I deserve a few extra minutes' time for having to read off the names of all those various insurance companies, but they are collectively the travelers' companies. Before we get to the meat of this, I want, as background, to make clear that on this argument, there are no absolute privilege issues at issue. All the attorney-client privilege and the work product documents have already been produced as required by Waste Management. What is at issue, and before you today, are consulting expert documents, subject only to the qualified immunity from discovery provided by Supreme Court Rule 201B3? I don't know if I understand that, exactly what you're saying, because I thought that when the response came from the first motion to compel, Apex had re-reviewed some things and identified some that they weren't willing to disclose, but had been part of the original. My understanding is that upon Judge Harrison's first ruling, in which he said Waste Management required them to produce the underlying counsel's files, what they produced was the attorney-client privilege materials and the work product materials. There was a subsequent privilege log or modification to the privilege log, upon which they still held firm with respect to the consultant privilege documents, and they didn't produce those. So when we went on the second motion to compel, Those documents? The consultant ones were not produced, but the attorney-client privilege ones and the work product ones were in fact produced. Okay, so the consultant documents were the ones that were held back. But when you went on the second motion to compel, you were essentially asking for the rest of the documents to be disclosed that had been part of the original documents, weren't you? No, since we already had in hand the attorney-client privilege documents and the work product documents, we weren't going back again for those same documents. Or timing-wise, I don't know if we had them in hand, but we were entitled to them. When the second motion to compel was filed, that was with respect to these consultant documents, which we had initially assumed would have been part and parcel of the first motion to compel, but when we didn't get them, we understood that the second motion to compel had to focus with respect to the consultant documents. That's what's at issue here today is the consultant documents. Correct. I understand. But they were included in the original request. Right. We felt our first motion to compel encompassed them. That's not how it was construed by APEX. We felt a second motion to compel was necessary. But that's why you filed the second motion to compel, because they didn't fulfill the first one. That's correct. Okay. But to be clear, the order, Judge Harrison's order, he issued the first order in this case, did not have the word consultant documents in it, nor were there consultant documents. I understand that. I don't want to mislead. Okay. The qualified nature of the immunity derives for consultant documents themselves, derives from the wording of 201B3 itself, and in particular, the relevant portion of that Supreme Court rule says, the identity, opinions, and work product of the consultant are discoverable only upon a showing of exceptional circumstances, under which it is impractical for the party seeking discovery to obtain facts or opinions on the same subject matter by other means. Let me ask a question about that. I mean, the trial court could have just said these are exceptional circumstances without saying we extend waste management. True? True. She did it expressly. But is that another ground upon which we could decide the issues in this case? Certainly you could decide it on that ground. I don't think that's been a ground that's been argued by the parties, but we've certainly argued the application of this rule. So there's no reason you couldn't decide it that way. Because the consultant immunity, like work product, is based on a procedural rule, by degree, again, based on the wording of this as compared to the work product rule, it provides a lesser degree of immunity than work product does. And this notion of it being a separate section as compared to the section two above it is the basis of my argument that there is a lesser immunity for consultant documents than there are with respect to work product. By contrast, attorney-client privilege is a creature of common law designed to protect and encourage the seeking of legal advice regardless of whether litigation is in prospect. It's not qualified. That's an example of an absolute privilege. But like I said, we're not dealing with absolute privileges today. What we're dealing with here is just qualified immunities. With that in mind, it's Traveler's position, and also Schwartz below, that the same logic that required disclosure of privileged and work product documents demands disclosure of consulting expert documents. And here's why. Like privileged and work product materials generated in defense of the underlying litigation, the consulting expert documents were created for the mutual benefit of APEX and its insurers in defeating or minimizing the underlying claims. That's the notion of common interest that your Honor referred to earlier. The consulting expert documents, like privileged and work product materials generated in defense of the underlying action, are at issue in the coverage action because the very conduct of the defense is a subject of the coverage action. The mental impressions and the case assessment, that's likely the meat of these consultant materials. The adversaries that the consulting expert documents were intended to help defeat, that's the opposing parties in the underlying case, can't benefit from the disclosure of the documents, the consultant documents here, because the underlying action is already over. Because APEX seeks to have its insurers pay for the consulting expert services, an impenetrable protection would create unfairness and potential injustice. And this is the exact same unfairness and injustice described in worst waste management at page 20. APEX offers no reason why consulting expert documents should be entitled to more protection than attorney-client privileged and work product documents. And here I hark back to the more qualified nature of the protection afforded to consulting expert documents that I described previously. And while waste management never addressed consulting expert documents, its silence on that subject does not limit the logic of its analysis. It does not matter how Wisconsin or Missouri might interpret the cooperation clause as APEX contends, because the cooperation clause alone did not compel the Supreme Court's decision in waste management. The waste management at issue analysis is independent of its cooperation clause analysis. The at issue analysis is alone dispositive here. A prime example of a court's slicing and dicing between these substantive and procedural issues can be found in CSX Transport, the case Your Honor referred to. In that case, while the insurance policy issues, the contract insurance policy issues were governed by Florida law, waste management applied to the discovery law, discovery issues. The exception to that being work product, because in federal court there's a separate body of law that applies strictly to work product. The lap and hickey analysis that APEX seeks to enlist addresses choice of law on policy interpretation, not on discovery and evidentiary issues, which is what we're addressing here today. Let's consider procedure versus substance a bit more. All of the legal issues relevant to discoverability are governed by foreign law, because those issues are procedural in nature. It's a fairly straightforward concept. The discovery immunity for consulting expert documents is created by a procedural rule, and any comparable immunity in other states is created by their procedural rules. In fact, Missouri does have its own procedural rule with respect to consultant privilege. Examples from our briefs where a rule-created immunity is governed by foreign law include the CXS case again, consolidation poll. The discovery immunity for consultant expert documents is a qualified immunity, depending on whether disclosure of those documents is necessary for fair adjudication of the particular action. The at-issue exception to privileges and discovery immunities depends on whether the party resisting discovery has put in issue matters that cannot be fairly adjudicated without allowing access to otherwise nondiscoverable material. In terms of these distinctions between substantive and procedural issues, substantive issues on balance as a whole depend on facts outside the current litigation. Procedural issues relate to fairness in adjudicating the current litigation, and that's what we are considering here, the latter. Accordingly, no choice of law analysis is needed here. Lapp and Hickey is not called upon. Consulting immunity is a procedural rule. The at-issue exception to that rule is procedural, and for procedural issues, Illinois turns to Illinois law, and there we have it. But even if the discovery immunity for consulting expert documents were treated as requiring a choice of law analysis, Illinois law still would be chosen. And don't get me wrong, I'm not saying it is, but I want to cover this alternative in the alternative. Illinois follows the restatement second of conflicts of law in making choice of law decisions. That's confirmed by an Illinois Supreme Court case, Morris and Chapman Associates v. Kitzman, as well as a couple Fifth District cases, and I think that's Mr. Knapp's case. It would be my father's case, too. Sure you are, just older, right? But there are also Fifth District cases which apply the restatement. Hall v. Sprint, Coates v. Hertz, these are cases incorporated in our materials. If a choice of law is required to resolve a privilege issue, that category of conflict of law issues, Illinois belongs to restatement section 139, and that's confirmed by the Allianz case in our materials. Restatement section 139.2 provides evidence that is privileged under the local law of the state, which has the most significant relationship with the communication, but which is not privileged under the local law of the forum, will be admitted unless there is some special reason why the forum policy favoring admission should not be given effect. In light of waste management, I think even Apex would agree, the consultant expert documents are not privileged under Illinois law, so they're admissible, unless there is some special reason why Illinois policy favoring admission should not be given effect. The special reasons are provided by example in the comments to 139.2, and they're the number one, the number and nature of contacts that the forum state has with the parties, and the transaction involved. Number two, the relative materiality of the evidence. Three, the kind of privilege involved, and four, fairness to the parties. Apex does not offer any such special reasons, and that's their burden. Apex ignores that these documents were created for the underlying Illinois litigation, and that the first special reason that is identified in the comments favors Illinois law, accordingly. They ignore that the consultants are all over the country, and one of Apex's lawyers, Mr. Knapp, in fact, is in Illinois. Even if Missouri has the most significant relationship to the consulting expert documents, Illinois law still applies because they haven't set forth a special circumstance, a special reason to forego application of Illinois law to the policy, express reason to forego application of the Illinois policy. Given, with respect to materiality, for instance, materiality favors Illinois because the documents saw go directly to the crux of the issues in our coverage case. Fairness, we talked about at least one example of fairness earlier, when we say it is compromised when the insurers are denied the very documents they're paying for. The limited nature of the discovery immunity, I think that I've kind of beat into the ground here. The limited and qualified nature of any discovery immunity for consulting experts' documents under Missouri law precludes any claim that Missouri has a fundamental interest in preventing application of the rule. In fact, Apex has not shown that Missouri or Wisconsin law differs from that of Illinois on the issues here overall. While Wisconsin disagrees with the waste management rule as to privileged documents, that's the hydride case, it agrees that work product documents are discoverable when at issue, and the citation for that is at 70 to 71. Because consulting expert documents are entitled to no greater protection than work product, Wisconsin would presumably apply the latter rule on consulting expert documents. Apex has not even shown that Missouri law disagrees with waste management rule as to privileged documents. It only argues that the cases insurers cite do not show that Missouri agrees with the waste management rule. In fact, Missouri agrees that even privileged documents are discoverable if they have been placed at issue in the litigation, and the citations from our briefs for that is the state X. Rel. Dewey and LaGouffe case. In conclusion, Apex offers no reason at all to conclude that Missouri would preclude discovery of consulting expert documents in the circumstances here, and this contempt order should be affirmed. Thank you. Thank you. Mr. Mayoff. Thank you. Very briefly, I want to mention a couple of things in particular. Council made the suggestion that the underlying action is already over. That's not entirely correct. This litigation relates to about four large pieces of litigation, a couple of which are included, one of which is very much alive, and it's the Illinois EPA versus Apex case, which is very much alive, still pending in Madison County, and in fact, the consulting documents that are at issue in this case relate directly to that open litigation. So I want to make that clarification. The council has suggested that the exception to the consulting witness privilege contained in the rule would be a basis for this court to rule in this case, but here's the problem with that. In fact, what the rule states is that the identity, opinions, and work product of the consultant are discoverable only upon a showing of exceptional circumstances under which it is impractical for the party seeking discovery to obtain facts or opinions on the same subject matter by other means. There's been no such show. This record is devoid of any evidence which would be a basis for either the trial court or this court to rule that that exception applies. So I don't think I disagree with counsel that that would be a basis for this court to rule in this case because no such showing of exceptional circumstances has been made or attempted for that matter. The Chapman versus Kitzman case I do know very well. It's quite an opportunity for me as a young lawyer to oppose one of the greatest attorneys in the state of Illinois, Morris Chapman. And as anyone who reads the case will know, he won and I lost ultimately, although we went all the way to the Illinois Supreme Court to get that done. My one and only opportunity to argue in the Supreme Court, so it's quite a privilege to be involved in that litigation. But Chapman versus Kitzman, the Illinois Supreme Court says almost parenthetically, refers almost parenthetically to the restatement and never actually says we are adopting the restatement. And that's the reason why when we were discussing that earlier, I sort of equivocated to say there are some discussions in the cases, but there isn't a case. And counsel hasn't cited to a case where the Supreme Court said we adopt that section. So I think it's a bit of a gray area. But as I said, from my standpoint, it makes no difference because I think the choice of law outcome is the same, whether you apply the Latin or Hickey or whether you apply the principles of the restatement. Fundamentally, fundamentally, there has been no citation by the appellee either in the trial court or in this court or any Illinois court that has ever applied the waste management rationale to consulting expert privilege. It just does not happen. The Supreme Court hasn't done it, no appellate court has done it. There is no precedent whatsoever in the state of Illinois for doing so. And I think that is the heart of the issue. All this discussion of all these other issues and very lengthy, complicated brief file by the appellee in this case essentially skirt that one fundamental flaw in their analysis, and that is the Supreme Court has never extended its ruling on consulting expert privilege, nor has any other review in court in any reported decision. We believe the trial court exceeded its authority in doing so, and we request it be reversed. Thank you, Mr. Mapp. Thank you, Ms. Bornick. Appreciate your arguments and your briefs, and we'll take the matter under advisement, remember ruling in due course. This court stands in recess until tomorrow morning at 9 o'clock. All rise.